398 So.2d 216 (1981)
FORD MOTOR COMPANY
v.
Gilbert FAIRLEY.
No. 52355.
Supreme Court of Mississippi.
May 6, 1981.
John Edgar Johnson, III, Eaton, Cottrell, Galloway & Lang, Gulfport, for appellant.
Jack Parsons, Parsons & Matthews, Wiggins, for appellee.
Before ROBERTSON, P.J., and BROOM and HAWKINS, JJ.
*217 HAWKINS, Justice, for the Court:
Ford Motor Company brings this appeal from a judgment rendered in favor of the appellee Gilbert Fairley in the amount of $5,600 in the Circuit Court of Stone County for breach of warranty of a 1976 model Ford Mustang II automobile sold appellee by Langley-Patterson Ford, Inc., a Ford dealer in Wiggins.
The automobile was purchased by Fairley on either February 24, or at the latest March 1, 1976, for $4,391.99, of which $600 represented a down payment. The car had 5,000 miles on it. With the purchase he received an express warranty from appellant warranting the automobile against defects for a period of 12 months or 12,000 miles, whichever came earliest. His family at the time owned two vehicles, and this car was purchased for transportation by his daughter and his wife back and forth to school, where the former was a senior and the latter an employee.
The Fairleys experienced no problem in the operation of the car from the date of purchase until June 1978, when the car had been driven 26,649 miles. In January 1978 appellant circulated letters throughout the United States to numerous car owners of certain of its models (Fairley being one) that their automobiles might have the problem of "piston scuffing", a condition caused by metal to metal contact between the pistons and cylinder walls within the engine, usually due to reduced lubrication during extremely cold weather or to poor maintenance practices. The letter went on to provide that if the owner experienced the problem, an authorized dealer would repair the problem at no charge for parts and labor *218 for the first 36 months or 36,000 miles of operation, whichever first occurred. At the time of receipt of this letter, of course, Fairley's initial express warranty had expired.
In June 1978, acting under this letter, Fairley returned the car to the dealer, where it was repaired by Walter Corbutt, mechanic for the dealer. Corbutt did a basic overhaul, putting in new pistons, rings, inserts, main bearings, a valve job and honing the engine head and engine block. Corbutt testified the repair was necessitated because of piston scuffing, and he found incorrect pistons had been installed in the block in the manufacture.
After repairs, when Fairley continued to use the car over the next several months, he experienced power problems, although the running of the engine sounded good to him. Loss of power was experienced especially in ascending hills. He took the car into the dealer's approximately six times and was told the timing was causing the problem.
In December 1978 appellant circulated another letter similar in content to the letter of January 1978 but this time notifying owners their cars might experience premature camshaft rocker-arm wear, and if so, appellant through an authorized dealer would make repairs on the first of 36,000 miles or 36 months ownership. Around the first of February 1979, the motor quit, and Fairley again took the car to the dealer's. On February 15 the dealer made repairs under this second letter from appellant, replacing the camshaft and rocker arms, and replacing the gasket. At this time the car had 35,242 miles on it. The repair order noted that a cylinder was misfiring.
After these repairs Fairley operated the car approximately two weeks, and on March 5, 1979, the car "tore up again, it stopped on me again." During this interim the car had not operated satisfactorily. This last time the car was towed into the successor Ford dealer at Wiggins, Larry Taylor Ford.
The dealership informed Fairley the trouble this time was caused by a burnt piston, not covered by warranty and refused to make repairs under any warranty. Fairley thereupon left the car with the dealer. Because of this refusal to make repairs under warranty of the appellant, Fairley brought suit.
Neither the initial dealer Langley-Patterson Ford, Inc., nor its successor Larry Taylor Ford, was named a defendant. Under his amended declaration, appellee claimed there was a breach of express warranty, as well as of the implied warranties of merchantability and fitness for a particular purpose under Sections 75-2-314 and 75-2-315, Mississippi Code 1972 Annotated. He further sought revocation of his acceptance under Section 75-2-711 and damages as provided in Section 75-2-714, and incidental and consequential damages as provided in Section 75-2-715.
Ford Motor Company denied any liability under any warranty, and alleged affirmatively the condition found in the car on March 5, 1979, was unrelated to any condition provided for in the two letters to car owners of January and December 1978, and further damages in this case would be limited in any event to those authorized under Section 75-2-719 and by the express warranty, namely: the cost of repair and replacement of parts.
At the trial the only expert witness tendered by Fairley as to the cause of the March 5, 1979, problem was the mechanic Corbutt, who had not examined the automobile subsequently to his repair in June 1978. He did, however, have the benefit of a description of the problem Fairley continued to have and pictures of the piston the dealer said was burnt on March 5, 1979, and it was his opinion the problem for which repairs were made in June 1978, and the problem for which Fairley returned the car on March 5, 1979, were related.
Mike Black, a sales manager for a local automobile dealer, testified for Fairley that following examination of the car it had a salvage value of $600. Upon cross-examination he testified that assuming parts and labor to install the necessary repairs cost $550, and the car was in working order thereafter, then the value of the car would *219 be the approximate top retail value of $3,250.
A motion for a directed verdict was overruled by the court. The expert tendered by Ford Motor Company was James Russell Lawson, a mechanic at Triple A Auto Parts in Wiggins. It was his opinion that "pistonscuffing" as provided in appellant's letter of January 1978 and "camshaft/rocker-arm repairs" as provided in the letter of December 1978, were unrelated to the condition of the motor, namely: a burnt piston.
This Court is faced with a determination of the applicability of implied warranties to this case, which also involves the question of lack of privity between appellant and appellee. As to the question of privity, Mississippi Code 1972 Annotated, section 11-7-20 (Supp. 1980), abolishes the necessity for privity.
As to the breach of any implied warranty of merchantability, the car had been driven over two years and 26,649 miles before Fairley experienced any difficulty with it. Such service as a matter of law negates a breach of an implied warranty of merchantability of this car. Neither was there any breach of an implied warranty of fitness for a particular purpose since the automobile was purchased for a very ordinary purpose. Garner v. S & S Livestock Dealers, Inc., 248 So.2d 783 (Miss. 1971).
We do find there was sufficient evidence to make a jury issue in this case as to whether the problem for which Fairley took the car to the dealer on March 5, 1979, was related to the problem of June 2, 1978, and on this issue the jury found in favor of Fairley.
Damages. Appellant states the damages here are limited to those provided in the warranty, namely: the cost of repairs and replacement of parts, that appellant limited its duty under the express warranty, all as authorized by Section 75-2-719. Such limitation presupposes, however, that the warrantor will fulfill his warranty. Had appellant done so in this case, this could have constituted the limit of exposure. Having failed, and wrongfully so, as found by the jury, to make repairs and replace damaged parts when it was obligated to do so, appellant cannot limit its damages to those specifically provided in its express warranty. Beal v. General Motors Corp., 354 F. Supp. 423 (D.C.Del. 1973); Clark v. International Harvester Co., 99 Idaho 326, 581 P.2d 784 (1978); Murray v. Holiday Rambler, Inc., 83 Wis.2d 406, 265 N.W.2d 513 (1978); Miss.Code 1972 Ann., § 75-2-719(2).
In this case Fairley had no incidental or consequential damages as contemplated by Section 75-2-715. He bought another second-hand car. Furthermore, in this case when appellant refused to make repairs under the warranty on March 5, 1979, Fairley was under a duty to take some reasonable action to minimize the breach. He took none whatever, but simply abandoned the car at the dealer's.
We think in this case special circumstances exist as provided under Section 75-2-714(2), or that damages should be determined "in any manner which is reasonable" as provided in sub-section (1) of this section. The reasonable measure of damages in this case, we find, to be the fair market value the car would have had with that age and number of miles with no mechanical difficulty as experienced by Fairley, and the value it had in its defective condition, and for which appellant refused to make repairs.
The case will, therefore, be reversed and remanded for a new trial on damages alone under proper instruction to the jury on this issue.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.