Donald LEE and William E. Grayson, II, Plaintiffs,

v.

GENERAL MOTORS CORPORATION, A Delaware Corporation, Defendant.

Civil Action No. 2:96–CV–12PG.

United States District Court, S.D. Mississippi, Hattiesburg Division.

Dec. 30, 1996.

J. Andrew Phelps, George W. Schmidt, II,
J. Andrew Phelps, Hattiesburg, MS, Larry
O. Norris, Hattiesburg, MS, for plaintiffs.

Joseph H. Ros, Katharine M. Samson, Jess
Hays Dickinson, Page, Mannino, Peresich,
Dickinson & McDermott, Gulfport, MS, for
defendant.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and to Strike under Rule 12(f). The Court, having reviewed the motion, the briefs of the parties, the authorities cited and being otherwise fully advised in the premises, finds as follows, to wit:

### FACTS

Plaintiffs own Chevrolet Blazers with detachable fiberglass roofs manufactured by General Motors Corporation (GM). Plaintiff Donald Lee purchased his 1986 Chevrolet Blazer used on February 6, 1992. At that time it had been driven 99,832 miles. William Grayson, II, the other Plaintiff, purchased his 1988 Chevrolet Blazer on December 19, 1994, after it had been driven 144,110 miles.[1] The vehicles involved in this litiga-

---

1. The source of the facts contained in the two sentences immediately preceding this footnote is Court ordered pre-discovery disclosure provided by Plaintiffs' counsel to Defense counsel. This Court requires that such information be provided at the time a complaint is filed. Uniform Civil Justice Expense and Delay Reduction Plan of the United States District Courts for the Northern and Southern Districts of Mississippi, Section Four, I(A)(1)(b).

These limited facts are not dispositive of any issue before the Court as it rules on this motion, but do put the case in perspective. However, even if these facts were crucial to any decision the Court is rendering as to this motion, the Court is of the opinion that it is not inappropriate to consider these limited facts. In *Mahone v. Addicks Utility District of Harris County*, 836 F.2d 921 (5th Cir.1988), the Fifth Circuit was presented with a question of a trial court going outside of the pleadings to hypothesize in regard to a motion to dismiss. The Court concluded that

tion are thus nine and ten-year-old vehicles. Plaintiffs filed this class action complaint on behalf of themselves and all others who own similar vehicles manufactured during the model years 1969 through 1991. The complaint alleges that GM subcontracted out the production of the fiberglass roofs, but required the subcontractor to comply with GM's specifications with respect to strength and crash worthiness. The complaint further alleges that the roofs produced by the subcontractor failed to meet GM's safety specifications and that, rather than requiring the subcontractor to bring the roofs into conformity with GM's specifications, GM lowered its safety specifications and installed the fiberglass roofs built to lower standards in all of the Blazers manufactured from 1969 until 1991.

Plaintiffs have sustained no personal injury. There have been no accidents involving the vehicles which are the subject matter of this litigation. Rather, Plaintiffs assert that the actions on the part of GM in lowering its standards caused or contributed to injuries to others in crash situations and are potentially life-threatening defects, and that consequently the vehicles are inherently defective and that this implies a product failure from the time the Blazers left the hands of the manufacturer.

Plaintiffs seek recovery on claims of negligence, strict liability, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, and intentional infliction of emotional distress. Plaintiffs seek $5,000 each for the replacement and/or repair costs of the roof, $10,000 for loss of use of enjoyment of their Blazers, $85,000 for emotional distress, and $100,000 each in punitive damages.

Defendant responded by filing a motion to dismiss Plaintiffs' claims pursuant to F.R.C.P. 12(b)(6); Defendant also moves the Court to strike the class allegations in the complaint pursuant to Rule 12(f).

## STANDARD OF REVIEW AS TO RULE 12(b)(6) MOTION

Dismissal pursuant to Rule 12(b)(6) is appropriate if a party fails to state a claim upon which relief can be granted. The allegations of the Complaint must be accepted as true when the Court considers whether the Plaintiff has stated a cause of action. *See Cramer v. Skinner,* 931 F.2d 1020 (5th Cir.1991). Plaintiffs are entitled to all favorable inferences that can be drawn from the facts alleged. The Complaint should not be dismissed unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *See Chrissy F. By Medley v. Mississippi DPW,* 925 F.2d 844 (5th Cir.1991).

## ANALYSIS AS TO PLAINTIFFS' PRODUCT LIABILITY CLAIMS UNDER STRICT LIABILITY AND/OR NEGLIGENCE

▮ In this diversity case, this Court is *Erie* bound to follow the decisions of the Mississippi Supreme Court, and, if there is no controlling precedent from that Court, to make an *Erie* guess as to what the Mississippi Supreme Court would decide if the issue were presented to that Court. Although the Mississippi Supreme Court has not ruled on the precise question of whether a products liability case can be brought under a theory of strict liability and/or negligence (tort), in which the plaintiffs seek only damages that are economic in nature, the overwhelming weight of authority holds that there can be no recovery in tort in such a case. *See Seely v. White Motor Co.,* 63 Cal.2d 9, 403 P.2d 145, 45 Cal.Rptr. 17 (1965) (leading case), and *Jones & Laughlin Steel Corp. v. Johns–Man-*

---

[g]oing outside the complaint to hypothesize a purpose will not conflict with the requirement that, when reviewing a complaint dismissed under Rule 12(b)(6), we accept as true all well pleaded facts. ... [W]hen truth is not the issue ... it makes sense to use a motion to dismiss as the vehicle through which to address the viability of the plaintiff's claim.

*Id.* at 936. The truthfulness as to the year model, date purchased and the mileage of the vehicles in question is not in dispute since this information was provided by Plaintiffs' counsel pursuant to rules which require that such information be filed as a part of the process of filing the complaint. *See also,* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1990).

*ville Sales Corp.*, 626 F.2d 280, 287 n. 13 (3d Cir.1980) (citing cases).

Although the Mississippi Supreme Court has not ruled on this precise question, this Court, through Judge Tom Lee made an *Erie* guess as to what the Mississippi Supreme Court would conclude in the event this question should be presented to that Court. In *East Mississippi Electric Power Assoc. v. Porcelain Products Co.*, 729 F.Supp. 512 (S.D.Miss.1990), this Court found:

> The overwhelming majority of courts that have confronted the issue have concluded that a plaintiff who suffers only economic loss as the result of a defective product may have no recovery in strict liability or negligence, though such damages may be pursued under a breach of warranty theory of liability.

*Id.* at 514. This Court said:

> Allowing recovery in tort under these circumstances would not further the purpose of strict liability, a doctrine which was developed "to ensure that the costs of *injuries* resulting from defective products are borne by the manufacturers that put such products on the market, rather than by the injured persons who are powerless to protect themselves."

(emphasis added). *Id.* at 517 (quoting from *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 377 P.2d 897, 901, 27 Cal.Rptr. 697, 701 (1963)). Judge Lee concluded that "to permit plaintiffs here to assert tort claims would undermine the warranty remedies provided by the Mississippi Commercial Code and unacceptably broaden the manufacturer's exposure to damages." 729 F.Supp. at 517.

In *East River Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), the United States Supreme Court made a thorough analysis of the cases on both sides of this issue and concluded that the general products liability law that has developed and which has followed *Seely* should be applied in admiralty. The United States Supreme Court held that

> [p]roducts liability grew out of a public policy judgment that people need more protection from dangerous products than is

afforded by the law of warranty. It is clear, however, that if this development were allowed to progress too far, contract law would drown in a sea of tort.

> ... The manufacturer is liable whether or not it is negligent because "public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market."

*Id.* at 866, 106 S.Ct. at 2300 (citations omitted). The Court continued:

> The minority view fails to account for the need to keep products liability and contract law in separate spheres and to maintain a realistic limitation on damages.

> Society need not presume that a customer needs special protection. The increased cost to the public that would result from holding a manufacturer liable in tort for injury to the product itself is not justified.

*Id.* at 870–872, 106 S.Ct. at 2301–2303.

Noting that Plaintiffs with legal claims for property damage still have a remedy, the Court observed that "[t]he maintenance of product value and quality is precisely the purpose of express and implied warranties. Therefore, a claim of a nonworking product can be brought as a breach of warranty action." *Id.* at 872, 106 S.Ct. at 2303 (citations omitted). The Court pointed out the benefits of such a distinction, saying "[t]he manufacturer can restrict its liability, within limits.... In exchange, the purchaser pays less for the product." *Id.* at 873, 106 S.Ct. at 2303 (citation omitted).

The Court went on to say:

> In products-liability law, where there is a duty to the public generally, foreseeability is an inadequate brake. Permitting recovery for all foreseeable claims for purely economic loss could make a manufacturer liable for vast sums. It would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter its product.

*Id.* at 874, 106 S.Ct. at 2304 (citations omitted).

The case before this Court presents the exact situation addressed by the Supreme Court when it referred to persons encountering products "downstream." The vehicles involved in this litigation are eight and ten-year-old vehicles. The vehicles Plaintiffs seek to include in the class action allegations would be anywhere from five years old to twenty-seven years old.

The Plaintiffs argue that this Court should follow the precedent and reasoning of *Santor v. A & M Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305 (1965). However, as noted by Judge Lee, the *Santor* case represents a minority view; furthermore, since the Supreme Court's decision in *East River,* most jurisdictions that have ruled on this question have followed the *Seely* rationale. Judge Lee in *East Mississippi* and the Supreme Court in *East River* both provide a thorough analysis of the case law relating to this question as well as the rationale for the conclusion this Court reaches. These cases enumerate three reasons for not allowing recovery in tort when only economic damages are sought to be recovered. First, tort law would subsume contract law, secondly the manufacturer's exposure would be too greatly expanded, and thirdly the increased costs to the ultimate consumer would be too great. Although this Court is not bound to follow Judge Lee's decision, the Court sees no justification for ruling to the contrary. This Court concurs with Judge Lee and concludes that the Mississippi Supreme Court, if called upon to decide this issue, would conclude that plaintiffs cannot pursue a remedy under theories of negligence and/or strict liability in tort when they seek damages that are solely economic in nature.

## ANALYSIS AS TO PLAINTIFFS' CLAIMS UNDER IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE

■ Plaintiffs assert claims arising under Title 75, Chapter 2, Sections 314 and 315 of Mississippi Code Annotated for breach of the implied warranties of merchantability and fitness for a particular purpose. In order to be merchantable, goods must, among other re-

quirements, "[be] fit for the ordinary purposes for which such goods are used. . . ." Miss.Code Ann. § 75-2-314 (1972). Defendant points to the Mississippi Supreme Court decision in *Ford Motor Co. v. Fairley,* 398 So.2d 216 (Miss.1981), to support its contention that Plaintiffs have failed to assert an actionable claim for breach of the implied warranty of merchantability. In that case, the Mississippi Supreme Court held:

> As to the breach of any implied warranty of merchantability, the car had been driven over two years and 26,649 miles before Fairley experienced any difficulty with it. Such service as a matter of law negates a breach of an implied warranty of merchantability of this car. Neither was there any breach of an implied warranty of fitness for a particular purpose since the automobile was purchased for a very ordinary purpose.

*Id.* at 219. The pleadings revealed that all vehicles sought to be included in this class action would be a minimum of five years old.

The Mississippi Supreme Court in the case of *Royal Lincoln–Mercury Sales, Inc. v. Wallace,* 415 So.2d 1024 (Miss.1982), concluded that where an automobile is purchased for the purpose of transportation that such a factual situation will not sustain a claim under the implied warranty of fitness for a particular purpose. The Court obviously concluded that "transportation" is a general, not a "particular purpose." Plaintiffs in this case argue that since the involved vehicles were marketed as sports utility vehicles that the *Royal Lincoln* case should not control. However, this Court concludes that such is not a sufficient distinction to avoid the holding of *Royal Lincoln.* Consequently, the facts alleged by Plaintiffs fail to state a cause of action under *Fairley* and *Royal Lincoln* either as to implied warranty of merchantability or implied warranty of fitness for a particular purpose.

## ANALYSIS AS TO PLAINTIFFS' CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ Finally, Defendants assert that Plaintiffs' claim for intentional infliction of emotional distress should be dismissed pur-

suant to Rule 12(b)(6). In order to prevail on a claim of intentional infliction of emotional distress, Plaintiffs must demonstrate that "the conduct complained of 'evoke[s] outrage or revulsion.'" *Jenkins v. City of Grenada,* 813 F.Supp. 443, 446 (N.D.Miss.1993). This Court has previously noted that it is *Erie* bound to follow the precedents of the Mississippi Supreme Court. This Court is likewise bound to follow decisions of the Fifth Circuit Court of Appeals when they have interpreted Mississippi law. The Fifth Circuit in interpreting Mississippi law on intentional infliction of emotional distress in the case of *White v. Walker,* 950 F.2d 972 (5th Cir.1991), stated:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go *beyond all possible bounds of decency,* and to be regarded as atrocious, and utterly intolerable in a civilized community.

(emphasis added). *Id.* at 978 (quoting Restatement Second of Torts § 46 cmt. d (1965)). The facts alleged in the complaint filed in this case do not come anywhere near supporting a claim for intentional infliction of emotional distress under Mississippi law as set forth in *White.*

### OTHER ALLEGATIONS

Since this Court has concluded that Plaintiffs have not stated a cause of action under any of their substantive claims, the Court does not reach Defendant's Motion to Strike the allegations relating to class certification. The Complaint also seeks recovery of damages for loss of use and punitive damages. Since the substantive counts of the Complaint have been found to be without merit, Plaintiffs are not entitled to pursue these elements of damages.

### CONCLUSION

Not every unfortunate incident that occurs in life, not every discomfort, not every unsatisfactory commercial transaction, not every disagreement among people and/or corporations, gives rise to a cause of action. Society cannot afford for the judiciary to permit a cause of action for every disagreement that occurs between citizens of our nation. To do so would result in a society entirely too litigious. We are approaching the saturation point. If Courts were to allow cases such as this to go forward, the costs of doing business would be so burdensome and so expensive that suppliers, manufacturers, and most consumers would suffer greatly. The only persons that would benefit by permitting cases such as this to go forward would be the lawyers handling the case and perhaps the few consumers directly involved in the litigation. It might well be that the increased cost of doing business would cost even those consumers directly involved in the litigation more than they could recover from such litigation.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Defendant's Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) is well-taken and should be, and hereby is, GRANTED as to all counts of Plaintiffs' Complaint. Defendant's Motion to Strike Class Allegations is dismissed as moot.